## G M McKELVEY CO v KEESECKER

Ohio Appeals, 7th Dist, Mahoning Co

No 2237. Decided Oct 9, 1936

Manchester, Ford, Bennett & Powers, Youngstown, for plaintiff in error.

Osborne & Cravener, Youngstown, for defendant in error.

### OPINION

By CARTER, J.

This cause is in this court on error from the Court of Common Pleas, Mahoning County. The defendant in error, plaintiff below, brought her action in the Court of Common Pleas, seeking damages for personal injuries claimed to have been sustained when she fell down a flight of steps extending from the driveway of her home to the entrance to an enclosed porch, being the home of her parents and the place where the minor child resided at the time. In her petition she alleges, in substance, that she is a minor of the age of five years; that The G. M. McKelvey Company is a corporation doing business and having its principal place of business in the city of Youngstown; that this company is engaged in operating what is commonly known as a department store, and in that business it owns delivery trucks and employs in the operation of these delivery trucks, drivers and what are commonly known or referred to as "jumpers" or helpers; that the "jumper" or helper rides with the driver and

takes parcels for delivery from the truck to the place of delivery; that she lived at the time of the matters and things hereinafter referred to with her father and mother at 356 Crandall Avenue, Youngstown; that this home on Crandall Avenue has as a part of the construction of the house a large sun porch; that this porch extends the entire width of the front of the house, being approximately 32 feet and extends out in front of the main body of the house a distance of 10 feet; that the entire sun porch is surrounded by a wainscoating; that above the wainscoating and on all sides of the sun porch are windows; that this house stands on the north side of Crandall Avenue; that on the west side of the building is a cement driveway, running north from Crandall Avenue; that running from the driveway to the sun porch are five steps, constructed of wood and leading into a door located on the west side of the sun porch; that this minor, ever since several months after birth, has been mentally and physically handicapped by reason of injuries received shortly after birth; that this handicap inhibited her speech and her general understanding of things; that she, since she had been able to walk, had used this sun porch almost continuously during her waking hours; that the door of the sun porch leading on the driveway, and the door leading into the house have constantly been kept closed and that she has been allowed unlimited access to the porch, and that she has never known the door leading to the driveway to be open except when someone was passing through the doorway; that on or about the 29th day of May, 1933, and at about the hour of 4:00 P. M., one of the agents and employees of the G. M. McKelvey Company, in the course and scope of his employment in delivering parcels of the G. M. McKelvey Company to customers, ran from a truck of the G. M. McKelvey Company, parked on Crandall Avenue, on to the driveway of plaintiff, ran up the steps leading to the sun porch, opened the door of the sun porch and permitted the same to stand open; that the plaintiff Margaret Louise Keesecker, ran and was running towards the said door leading from the sun porch to the driveway, and that by reason of the door standing open she was caused to fall through same down the steps and on to the driveway, injuring herself; that she fell forward and downward and on to the driveway, landing on her face, causing and producing injuries; that in July of 1932 Margaret Louise Keesecker had been operated

upon; that she was recovering from her operation; that she had mastered some of her physical and nervous disorders by reason of the operation, but that since the accident, as aforesaid, her condition has been gravely impaired and that she has relapsed into a condition more serious and of graver consequence than that enjoyed prior to the operation. She further alleges that the fall has entirely disorganized her physical and nervous condition, and that she believes and therefore avers that the effects of same will be permanent; that the accident and injuries resulting therefrom were directly and proximately brought about by the careless, negligent action of the agent and employe of the defendant, who was careless and negligent in the following respects: First, in and by carelessly and negligently and unlawfully opening the sun porch door and leaving the same open at a time when he knew, or, in the exercise of ordinary care, should have known that plaintiff's minor would have fallen through. Second, in and by coming on to plaintiff's property at a time when he had no right or privilege to come on said property. Third, in and by carelessly and negligently and unlawfully opening the door of the sun porch and entering on to the sun porch at a time when he had no right, privilege or reason to open the door or enter on the sun porch. Fourth, in and by carelessly and negligently failing and neglecting to guard plaintiff's minor and to protect her from falling through said doorway at a time he knew, or, in the exercise of ordinary care, should have known, the danger of her so falling, and that she has suffered injuries and damages resulting therefrom in the amount of $25,000.00.

To this petition the defendant filed its answer and admits that plaintiff is a minor and brings this action by her father and next friend; that the defendant, The G. M. McKelvey Company, is a corporation doing business and having its principal place of business in the city of Youngstown, where it operates what is known as a department store; that in connection therewith it owns and operates various delivery trucks; that at the times mentioned in plaintiff's petition the minor plaintiff resided with her father and mother at 356 Crandall Avenue in the City of Youngstown, and that the minor is and has been mentally and physically handicapped, affecting her speech and general understanding. The defendant then denies each and every allegation contained in plaintiff's pe-

tition, except those specifically admitted to be true.

The cause came on for trial to the court and jury, resulting in a verdict in favor of the plaintiff in the amount of $13,000.00. Motion for new trial was filed and overruled and judgment rendered on the verdict, and error is prosecuted to this court to reverse this verdict and judgment.

At the conclusion of plaintiff's evidence the defendant moved for a directed verdict, which was overruled and exceptions noted. At the conclusion of all the evidence a like motion was made by the defendant, which was overruled and exceptions noted.

There is little dispute in connection with the operative facts in this case, save and except that the agent and employe of the defendant company, who was seeking to deliver the parcel, testified that he did not know whether he closed the door or not at the time of the entrance on the porch. There is testimony in the record that the child had never opened the door. One of the questions presented to the court is, assuming that the agent and employe of the company did leave the door open, as claimed by the plaintiff, and the injuries occurred, was there under all the facts and circumstances indicated in the record actionable negligence? The record discloses that the G. M. McKelvey Company, defendant, is an Ohio corporation, operating a large department store in Youngstown, and in conducting this business it owns and operates a fleet of trucks for the purpose of making deliveries to its patrons; that on May 29th, 1933, about 4:00 P. M., one of the defendant's trucks, operated by Robert McIntire, was engaged in making deliveries on the north side of the city, accompanied by one Thomas Donnelly, a helper; the truck was driven up Crandall Avenue in an easterly direction and stopped opposite plaintiff's house on the south side of the street. Two packages were to be delivered to the home of Dr. Sedwitz, who lives in the first house east of plaintiff's home. Apparently some confusion, resulting from the way the two packages were addressed, the number of the Sedwitz home being 350, and the number of the Keesecker home being 356. Connelly, concluding that the number 350 was in fact number 356, went to the Keesecker driveway, walked up the front steps and opened the door on to a sun porch of the house. The entrance to this enclosed porch was on the westerly side and five steps led from the driveway on to the porch. The front door of the main part of the house was at about the middle

of the porch. The evidence indicates that Donnelly walked directly to this door leading into the main part of the house and rang the door bell, which was alongside of this door. As Donnelly entered the porch he saw the plaintiff and as he was standing at the main doorway the plaintiff was standing in back of him, a little to his right or to the east of him. There was nothing about the plaintiff's appearance to indicate to Donnelly that the child was other than normal. The evidence further indicates that Donnelly had no knowledge of the mental or physical condition of this child. While standing at the door, waiting for a response, Donnelly heard the plaintiff cry and walked over to the door leading off the porch, and found the plaintiff lying in the driveway. At this time her nose was bleeding and she was crying. There were no warnings of any kind to those coming upon the porch to close the door, neither were there any warnings to use any other door of the house for the purpose of entrance thereto. The plaintiff had been abnormal since birth, indicated by spells which occurred when she was four and a half to five months old, during which time she had a nervous twitching of her extremities, the body would be cold to touch and her head would drop in an abnormal manner. Dr. Massey was called to treat her. No improvement appeared in her condition, and when she was about two and one-half to three years of age her parents took her to Dr. Middleton, at which time she could neither talk nor walk, was unable to feed herself, and had as many as four or five spells a day. Dr. Middleton could do nothing to relieve this condition, but she remained under his care until March, 1933, when she was taken to the Cleveland Clinic. At this clinic Dr. Gardner examined her and advised an operation. He X-rayed the brain and diagnosed the cause of the trouble as a brain tumor about an inch and a half in diameter, which was causing a pressure on the brain structure. A spinal puncture was made, which revealed a pressure higher than normal, and thereafter on July 7th the symptoms indicated that the tumor was at least the same size or larger. On this date he opened the skull by removing a piece of bone, three inches in diameter, inside the brain. He located the tumor but found that it was in such a position that to remove it would in all probability result fatally. He therefore did not remove the tumor, closed the incision, which was followed by a convalescence. The doctor testified that the

operation would at least temporarily relieve the intracranial pressure. even though nothing was removed at the time. Dr. Middleton testified on behalf of the plaintiff that he first saw the child in April of 1930, in his office, at which time she was three years old, well developed and nourished physically. The reflexes on the right side of her body were gone, the left reflexes present, the left eye disc was cloudy and the right side congested. The child gritted its teeth constantly and had a tendency to fall forward on her face and appeared to be oblivious of what was going on. His diagnosis was epilepsy of the petit mal type with seizures about six or eight times a day. He again saw the plaintiff on December 15, 1930, at which time her condition was unimproved; that on July 21, 1932, after the operation, he states that she was able to walk and feed herself without assistance and the attacks were lessening. He again saw her in August, 1932, and says her condition was improved; that she was able to say a few words, and he saw her again on January 4th, 1933, and noticed additional improvement. The doctor was called on the day of the accident and testified that he found the plaintiff in convulsions; that after the fall a relapse occurred; that she now has several attacks a day, is unable to feed herself or stand alone, and grits her teeth constantly. There is a large amount of testimony bearing on the condition of the child before the operation and after, and after the fall, which we deem unnecessary to quote. Suffice it to say that the evidence indicates that at the time of the injury she was a normal appearing child, five years of age.

It is fundamental that not all injuries received by a party and damages arising therefrom, are actionable even though negligence is involved. In order to be actionable to the extent that liability attaches, such should have been foreseen or reasonably anticipated by the wrongdoer as likely to follow the act. In the case of **Miller v The Baltimore & Ohio S. W. Railroad Company, 78 Oh St 309,** the second paragraph of the syllabus is as follows: ·

"In contemplation of law an injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable."

In the course of the court's opinion, on page 325, the court say:

"The rule is elementary that a defendant in an action for negligence can be held to respond in damages only for the immediate and proximate result of the negligent act complained of and in determining what is direct or proximate cause the rule requires that the injury sustained shall be the natural and probable consequence of the negligence alleged, that is such consequence as under the surrounding circumstances of the particular case might and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act."

This announced doctrine is followed in the case of **Armour v Ott, 117 Oh St 252.**

Should the employe have reasonably foreseen or anticipated that this child would do what he did? That is, go to the doorway and fall down these steps. No doubt the real cause of the falling was due to the child's mental and physical status. Had it been a normal child, not much doubt can be entertained but that the injury would not have happened as a normal child would not have experienced the fall and resulting injuries. We are all aware that a normal child of the age of this child not only travels up and down steps and stairways without injury, but also engages in many activities at that age more hazardous than the traveling up and down steps. We are familiar with the fact that children five years of age in this day and age attend school and many other activities which would not be expected of a subnormal child such as the one in question. Using these observations as a standard we are satisfied that an ordinarily prudent person might reasonably conclude that a normal child of the age of five years would not do the thing that was done by the child in question and therefore that such injuries and damages, if any, that the child sustained, could not have been foreseen or reasonably anticipated. Coming to this conclusion we hold that there was no actionable negligence attributable to the defendant.

However, the plaintiff alleges in his petition that the defendant company, through its agent and employe, was at the time of the negligence claimed a trespasser; that he was there without invitation, either express, implied or licensed, and that the defendant therefore was liable for any and all damages by reason of the fact that the agent at the time was a trespasser. In the case of the **City of Barberton v Miesch, 128 Oh St 169,** the fourth paragraph of the syllabus is as follows:

"Liability for damages proximately resulting from such trespass is not dependent upon negligence."

The above cited case was a case of trespass, and many cases to the same effect are cited therein. In the case at bar the record discloses that the child was residing with the parents and in the home of the parents when this injury occurred. * * * In the Restatement of the Law of Torts, page 891, §329, a trespasser is defined as follows:

"A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise."

On page 893, §330, a licensee is defined as follows:

"A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent whether given by invitation or permission."

Under this subject, at page 896, the following observation is made:

"If the possessor has by word or conduct sufficiently expressed his consent to the entry of all others or a particular class thereof, it is immaterial whether the particular person entering knows or does not know of the action or words with which this consent is expressed. So where it is local custom for possessors of land to permit others to enter their land for particular purposes it is immaterial that the particular person entering is not a member of the local community, or if a member of the local community is ignorant of the custom."

On page 1016, paragraph 380, in dealing with the liability of trespassers, we find the following:

"A trespasser on land is subject to liability for bodily harm caused to the possessor thereof or to members of his household by any act done, actively carried on or condition created by the trespasser while upon the land, irrespective of whether the trespasser's conduct is such as would subject him to liability were he not a trespasser."

On page 1017 is found the following:

"This section states the peculiar liability to which a trespasser is subject for bodily harm caused by the possessor of land or the members of his household by the conduct of a trespasser while upon the land, irrespective of whether his conduct if it occurred elsewhere would subject him to liability to them. It is therefore not necessary to the liability of the trespasser that his conduct should be intentionally wrong or recklessly or negligently disregardful of the interests of the possessor or a member of his household or an activity which like blasting is so hazardous that it must be carried on at the risk of answering for harm however caused by it. Thus one who trespasses upon the land of another incurs the risk of becoming liable for any bodily harm which is caused to the possessor of the land or to members of his household by any conduct of the trespasser during the continuance of his trespass no matter how otherwise innocent such conduct may be. It is enough to make the rule stated in this section applicable that the actor is a trespasser by being upon another's land without a privilege to be thereon created either by the consent of the possessor by the past consent of the possessor or his predecessor or by some rule of law which permits him to enter for a particular purpose or by a local or general custom which entitles him to assume that the possessor will consent to his entry. It is immaterial whether the actor knows that he is intruding upon the land of another or is without negligence ignorant that he is so doing."

See also Berdick's Law of Torts, paragraph 481, page 551.

The question of a trespass being committed at the time was taken from the jury by the court and therefore that question was not submitted. The only question submitted was whether the defendant, through its agent and employe, was negligent. We have already concluded that there was no actionable negligence, assuming the door was left open by the agent and employe of the defendant company. However, there still remains the question whether the defendant company, through its agent and employe, was a trespasser. If he was, then according to the authorities above cited the company would be liable for [redacted] any damages directly and proximately resulting, regardless of negligence. The plaintiff recovered a verdict notwithstanding the question of trespass was not submitted to the jury, apparently on the theory that the defendant was guilty of negligence. Whether there was a trespass at the time [redacted] and whether such was a direct and proximate cause of the injuries and damages of which plaintiff complains are jury questions and should

have been submitted to the jury under proper instructions.

It is urged that there should be no reversal of this case, for the reason that substantial justice has been done in that the court was in error in not recognizing the issue of trespass. In this ▮▮▮▮ we cannot concur. According to the view of this court, if there is no liability created by reason of trespass, then the plaintiff cannot recover. It would hardly be logical to hold that inasmuch as plaintiff has recovered a verdict in this case on an issue that was submitted which this court holds was contrary to law to hold that the verdict should stand because there was another issue in the case which was not submitted to the jury wherein the plaintiff might or might not recover.

It is therefore the conclusion of this court that the case should be reversed and remanded to the Court of Common Pleas, to submit the issue of trespass to a jury, and whether such trespass was a direct and proximate cause of the injuries and damages, if any of which plaintiff complains and if so the amount of that damage. Judgment reversed. Cause remanded.

ROBERTS and NICHOLS, JJ, concur.