KEESECKER, APPELLEE, *v.* THE G. M. McKELVEY CO., APPELLANT.

(No. 2791—Decided December 19, 1941.)

*Mr. Clyde W. Osborne,* for appellee.
*Messrs. Manchester, Ford, Bennett & Powers,* for appellant.

STEVENS, J. This is an appeal on questions of law from a verdict and judgment in favor of plaintiff (appellee) because of personal injuries allegedly sustained by her.

The action has an extensive and unusual legal history. It was first tried upon a petition which charged the defendant with trespass and negligence. The trial court in that trial withdrew the issue of trespass from the consideration of the jury, and submitted the case to the jury upon the question of defendant's negligence. A verdict and judgment for plaintiff ensued, which was reversed by the Court of Appeals for the

Seventh District upon the ground that, as a matter of law, defendant was not liable for negligence under the facts disclosed by the record because the injuries to plaintiff could not have been foreseen or reasonably anticipated, and there was thus no evidence of negligence upon the part of defendant's agent. The cause was thereupon remanded to the trial court for retrial. See *McKelvey Co.* v. *Keesecker,* 23 Ohio Law Abs., 353.

During the second trial in the Court of Common Pleas, an amended petition was filed by plaintiff, in which the cause of action for negligence was omitted and an action for trespass alone pleaded. Submission of the case to that jury upon the issue of trespass resulted in a verdict and judgment for the defendant. Upon appeal, a visiting Court of Appeals reversed that judgment upon the ground that defendant's agent was a trespasser as a matter of law, and, some injury to plaintiff being conceded, the verdict and judgment for defendant were manifestly against the weight of the evidence. The case was again remanded for retrial. See *Keesecker* v. *McKelvey Co.,* 64 Ohio App., 29, 27 N. E. (2d), 787.

In the third trial, upon the same pleadings as were present in the second trial, the case was submitted to the jury upon the instruction that defendant was a trespasser as a matter of law, and that the only issues for consideration of the jury were those of proximate cause and damages. That jury returned a verdict for plaintiff, upon which judgment was entered.

The facts are briefly these:

Plaintiff, at the time of the filing of the first petition herein, was a child approximately five and one-half years of age, living with her parents in their residence at 356 Crandall Avenue, Youngstown, Ohio, they being in possession of the premises as tenants. Across the front of that residence was a glass-enclosed, unheated porch, with a set of steps leading from the driveway to said porch; an unlocked porch door provided entrance

thereto. Some 18 feet from said porch door was the door providing the main entrance to the house proper.

The plaintiff, born in December, 1927, had been, from the time of birth up to the time she was approximately four and one-half years of age, a child who showed no mental development. Her condition was such that she could neither move nor talk, had no control of her limbs, ground her teeth, attempted to tear off her clothes, and made no response to auditory or ocular stimuli.

At the time said child was approximately four and one-half years of age, she was taken to the Cleveland Clinic at Cleveland, Ohio, for examination by Dr. Gardner, an eminent neurological surgeon. He described her condition at that time as above indicated. Dr. Gardner recommended the taking of an X-ray picture of the brain, described as an encephalograph. The taking of such a picture is accomplished by the removal of spinal fluid from the spinal canal and the introduction of air therein. Through the medium of the encephalograph, a brain lesion was demonstrated and an operation advised.

On June 8, 1932, Dr. Gardner operated on the plaintiff, made a skull flap, and upon incising the brain discovered a mass apparently one to one and one-half inches in diameter extending into the brain for an unknown distance and firmly adhering to the brain tissue on the right side of the brain. Concluding it to be nonfeasible to attempt the removal of said mass, the brain covering was closed and sutured, the bone of the skull replaced, leaving a window therein, and the scalp sutured. After that operation, a normal recovery from the operation apparently ensued. During the following ten months the child's condition improved to the extent that it may be said the evidence shows she was able to move about, to express a very few simple words, to make the calls of nature known, and to some degree

feed herself. The child was permitted to occupy the front porch hereinbefore described.

On May 29, 1933, a truck belonging to the defendant company stopped in front of the residence of plaintiff for the purpose of delivering two packages. There were two men on this truck, the driver and a helper. Due to some confusion in the addresses on said packages, the helper, under the *bona fide* impression that one of the packages was to be delivered to plaintiff's residence, walked up the driveway leading thereto, went up the steps, through the door leading onto the porch, and over to the door providing the main entrance to the house. As he came onto the porch, he saw the plaintiff, who, at that time, was looking out of the window. The condition of the plaintiff was not such as to excite inquiry on the part of defendant's agent, and apparently there was nothing about her appearance to indicate her mental condition.

When the helper arrived at the door leading from the porch into the house, he pushed the doorbell button, and knocked. While waiting for a response to his alarms, he heard the child cry, and, upon going over to the door leading from the porch onto the driveway, he found plaintiff lying on the driveway. He immediately picked her up, took her onto the porch, set her down, and was wiping the blood from her nose and face when plaintiff's mother came onto the porch. The agent of the defendant was then informed that the package did not belong at the Keesecker house, and he left the premises thereafter, delivery of the package being made at the residence of Dr. Sedwitz immediately next door, where said package actually was to be delivered.

It is claimed by the plaintiff that, as a result of the injuries sustained by her in said fall, her condition immediately became such as had pertained prior to the operation upon her brain, and has so continued since that time; that such condition is permanent, and that

there is no reasonable ground to anticipate any improvement. therein.

In considering this case, at the outset it must be recalled that there was presented for consideration by the jury, and there is presented in this review, an action based only upon trespass; that no action for negligence is presented for disposition by this court.

If the defendant's agent was not a trespasser, the defendant is not liable under the pleadings and evidence in this case.

It is the claim of the plaintiff that "the accident and the injuries resulting therefrom were directly and proximately caused and brought about by and through the acts of the agent and employee of this defendant, within the course and scope of his employment, in the following respects, to wit:

"First: In and about coming onto plaintiff's property at a time when he had no right or privilege to come on said property.

"Second: In and about opening the door of said sun porch at a time when he had no right, privilege or reason to open said door or enter onto said sun porch."

In other words, plaintiff claims that the defendant's agent was a trespasser merely because of his entry upon the premises of plaintiff, and further by reason of his entry upon the porch of the house thereon.

Actions for damages growing out of trespass ordinarily divide themselves into two general classifications—namely:

1. Those where the trespasser sues to recover for injuries or damage sustained by him because of the claimed dereliction of duty of the owner of or occupier of the premises upon which the trespass occurs.

2. Those where one lawfully upon the premises is injured or damaged by reason of the conduct of the trespasser.

This is not a case where one who enters upon the real property of another is seeking recovery from such

other because of injuries suffered by him while on such other's real property.

It is an action *against* the one so entering, seeking to recover from him for injuries claimed to have been indirectly caused to one lawfully upon the premises, by reason of the entrance of the former upon such real property, and his conduct thereon.

The first matter for consideration, then, is, What was the status of defendant's agent when he entered upon plaintiff's premises, under the circumstances here disclosed?

It is not denied that when he entered plaintiff's premises, and approached the door opening onto the front porch, he did so under the mistaken belief that he had a parcel to be delivered to the occupants of said premises.

Proceeding under such mistaken belief, was he a trespasser when he entered said premises?

A determination of that question requires consideration of the distinction between a trespasser, an invitee, and a bare licensee.

A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent, express or implied, or by law.

An invitee upon premises is one who enters thereon at the invitation, express or implied, of the possessor thereof; invitees constitute a special class of licensees.

A bare licensee is one, not standing in a contractual relationship with the possessor of premises, who is permitted, expressly or impliedly, to go on the premises merely for his own interest, convenience, or gratification.

In ascertaining whether one entering the premises of another is to be considered a trespasser, an invitee or a licensee, there is a well-defined difference between the cases where recovery is sought by the entrant against the possessor of the premises, and where re-

covery is sought against the entrant for injury or damage indirectly caused by him while on the premises.

In the one case the measure of duty of the owner or possessor of the premises to the entrant is involved, while in the other the measure of duty of the entrant to persons lawfully upon the premises is involved, and their respective duties arise out of wholly different circumstances.

Authorities in the one class of cases are not controlling in the other.

One who enters upon the real property of another is not a trespasser unless his entrance thereupon is wrongful; and his entry is not wrongful if he enters by invitation or with the consent of such other, express or implied.

One may be invited either expressly or impliedly to enter the premises of another, in which event he is an invitee, but not a trespasser.

One may enter the premises of another without invitation, express or implied, and still not be a trespasser, provided his entry was either expressly or impliedly consented to by the possessor of the premises, in which event he is a bare licensee.

In cases where recovery is sought, from one entering the premises of another, for injuries alleged to have been indirectly caused by him, while thereon, to one lawfully upon such premises, the consent of the possessor of the premises to his entry may be implied from the habits, customs and usages of the country, by which the strict rule of the English common law as to entry upon a close is by common understanding modified; entry under such circumstances constitutes the entrant a bare licensee. *McKee et al.* v. *Gratz*, 260 U. S., 127, 67 L. Ed., 167; *Marsh* v. *Colby*, 39 Mich., 626; 2 Restatement of the Law of Torts, Section 330, comment d at p. 895.

Viewed in the light of some decisions, defendant's agent might be considered an invitee of plaintiff's

father, the possessor of the premises in question. The agent of defendant entered the premises in the *bona fide* belief that he was to make delivery of a package to the occupants thereof. Had that been true, then his activities would have inured to the benefit of the purchaser occupant of the premises, as well as to the defendant seller, and would have been considered conduct in the usual course of business.

Does the fact that defendant's agent was mistaken, change the rule?

"3. Invitation by owner or occupant of premises is implied where one goes on the premises for benefit, *real* or *supposed*, of the owner or occupant, or in matter of mutual interest or in usual course of business, or for performance of some duty." (Italics ours.) *Petree* v. *Davison-Paxon-Stokes Co.*, 30 Ga. App., 490, 118 S. E., 697.

The same rule applies as to bare licensees.

The well-known and well-established usages in communities where merchants maintain delivery service, entitle such merchants to assume that the possessor of land is willing to permit their delivery men to enter for the purpose of ascertaining, by proper means, whether the person who purchased the goods lives on said premises, unless and until a particular possessor expresses unwillingness to admit them. *McKee et al.* v. *Gratz, supra,* and *Marsh* v. *Colby, supra.*

In the instant case, the delivery servant being justifiably uncertain as to whether the parcel he had to deliver was property which should be delivered to the occupants of said house, entered the premises in good faith to ascertain that fact.

In our judgment, if the delivery servant in this case was not a business invitee, he was at least a bare licensee when he entered said premises, and as a matter of law he was not a trespasser at that time.

Did the agent's entry upon the porch of said prem-

ises and his progress thereupon to the front door constitute him a trespasser?

We find as a fact that the portion of the building occupied by plaintiff—variously designated as a "solarium," "sun room," "sun porch," and "porch"—was in reality a porch, and not a part of the enclosure usually referred to as the house proper.

It may be argued that, assuming the agent's entry upon the real property to have been proper, when he entered upon the porch he became a trespasser, and that trespass related back to the time of his entry, and constituted him a trespasser *ab initio;* or, if he exceeded the terms of his license while on said premises he became a trespasser *ab initio.*

Such, however, we do not understand to be the rule.

The defendant's servant, when he entered said premises, was an implied licensee of the possessor thereof, and his status as such was in no way changed by his acts of nonfeasance or negligence while on said premises; he did not thereby become a trespasser *ab initio. Stone* v. *Knapp,* 29 Vt., 501; *Jewell* v. *Mahood,* 44 N. H., 474, 84 Am. Dec., 90; *Esty* v. *Wilmot,* 81 Mass., 168; *Wendell* v. *Johnson,* 8 N. H., 220, 29 Am. Dec., 648; *Hatch* v. *Rose,* 107 Me., 182, 77 A., 716, 29 L. R. A. (N. S.), 774; *Sheftall* v. *Zipperer,* 133 Ga., 488, 66 S. E., 253, 27 L. R. A. (N. S.), 442, and notes thereunder at page 443; *Nichols* v. *Sonia,* 113 Me., 529, 95 A., 209.

If, in entering upon the premises, the agent of defendant was not a trespasser, he did not become such by his entry upon the porch; for if he was a licensee when he entered the premises to ascertain a fact from the occupant thereof, such license extended to going upon the porch to contact such occupant. He could not reasonably be expected to stand upon the driveway and shout to the occupant.

Some of the other cases examined and considered by the court as bearing upon the questions under discussion are: *McKone* v. *Michigan Central Rd. Co.,* 51

Mich., 601, 17 N. W., 74; *McCullen* v. *Fishell Brothers Amusement Co.,* 198 Mo. App., 130, 199 S. W., 439; *Baseball Pub. Co.* v. *Bruton,* 302 Mass., 54, 18 N. E. (2d), 362; *Jonosky* v. *Northern Pacific Ry. Co.,* 57 Mont., 63, 187 P., 1014.

Being unanimously of the opinion that, under this record, the defendant's agent, as a matter of law, was not a trespasser, and the action being predicated solely upon a claim of trespass, it follows that no right of recovery of damages for trespass exists in the plaintiff.

Accordingly, the judgment for plaintiff is reversed; and this court, now proceeding to render the judgment which the trial court should have entered, orders that final judgment for defendant be entered; all at plaintiff's costs, with exceptions to plaintiff.

*Judgment reversed.*

Doyle, P. J., and Washburn, J., concur.

Doyle, P. J., Stevens and Washburn, JJ., of the Ninth Appellate District, sitting by designation in the Seventh Appellate District.