CITY OF DAYTON, APPELLEE, *v.* McLAUGHLIN, APPELLANT.

(No. 10650—Decided
July 6, 1988.)

*Vincent Popp,* prosecuting attorney, for appellee.

*Kurt Portmann,* county public defender, for appellant.

FAIN, J. Defendant-appellant, Chuck McLaughlin, appeals from his convictions and sentences for violating Sections 91.50(A)(5) and 91.50(B) of the city of Dayton Revised Code of General Ordinances ("R.C.G.O."). These sections pertain to an owner permitting a dog to bite another, and an owner keeping a vicious dog, respectively. With respect to the first charge, McLaughlin had interposed an affirmative defense based upon the victim's having been unlawfully on his property. McLaughlin claims that the trial court erred when it rejected his affirmative defense, holding that the victim was not unlawfully upon McLaughlin's property. McLaughlin also claims that the two offenses are allied

offenses of similar import within the contemplation of R.C. 2941.25, so that the trial court erred by convicting him of both offenses.

McLaughlin's assertion that the victim was unlawfully upon McLaughlin's property is not supportable, since implied permission to be on the property was given to the victim. Therefore, that assignment of error is overruled. We agree with McLaughlin, however, that the two offenses are allied offenses of similar import, so that he could not be convicted of both.

### I

One afternoon in mid-July, Kenneth Stupp, age seven, and his grandmother, Audra Griesheimer, age seventy-one, were delivering newspapers for the regular carrier. They were on foot. They delivered the last newspaper to McLaughlin's house at 124 South Findlay, in Dayton.

Stupp delivered the newspaper by going onto McLaughlin's property, up his porch steps and tossing the newspaper onto the porch. The temperature was ninety-two degrees Fahrenheit, and Griesheimer was feeling the heat. She recognized that if she walked up McLaughlin's driveway and then alongside his garage, she would get to the alley which led directly to her home. Consequently, rather than leaving McLaughlin's property the same way they came in, Stupp and his grandmother walked down McLaughlin's driveway, intending to exit by the alley to the rear of McLaughlin's property. They did not leave and re-enter McLaughlin's property.

Although there was a sign in McLaughlin's front yard which said "Guard Dog On Duty," and Griesheimer had noted the sign, there was no fence, sign, or obstacle along their path from McLaughlin's front porch to his driveway and down the driveway to the alley at the rear of his property.

McLaughlin owned a dog, described by him as part "shepherd" and part "chow," which was tied to a tree next to the driveway. Neither Stupp nor his grandmother saw the dog at first, because the dog was hidden by the tree. When Stupp first noticed the dog, he turned and began moving away from it, but before he could get away, the dog attacked and bit Stupp on the buttocks and rectum, throwing him down in the process, and then biting him again on the left arm below the elbow. The rectal bite required surgery; the bite on the arm required stitches.

McLaughlin, who was not present at the time of these events, was charged with violating R.C.G.O. 91.50 (A)(5), which provides as follows:

"(A) No person owning, keeping, possessing, harboring, maintaining, or having the care, custody, or control of a dog shall suffer or permit such dog to:

"(1) * * *
"* * *

"(5) Bite or otherwise cause physical harm to any other person, domestic animal, or feline."

McLaughlin was also charged with violating R.C.G.O. 91.50(B), which provides as follows:

"No person shall own, keep, possess, harbor, maintain, or have the care, custody, or control of a vicious dog within the city."

To the charge of violating R.C.G.O. 91.50(A)(5), McLaughlin interposed the affirmative defense provided for by R.C.G.O. 91.50(D)(2), which provides as follows:

"It shall be an affirmative defense to a violation of § 91.50(A)(3), (4), and (5) that at the time of the occurrence such other person, domestic animal or feline was unlawfully on the property owned or controlled by the owner of

such dog and that such dog was not unsecured."

The trial court held that Stupp was not unlawfully on McLaughlin's property, and found McLaughlin guilty of both offenses. From his conviction and sentences, McLaughlin appeals.

## II

McLaughlin's first assignment of error is as follows:

"The trial court erred in holding that the newspaper carriers were lawfully on appellant's property, thus the affirmative defense set forth in R.C.G.O. Section 91.50(D)(2) was inapplicable."

Essentially, McLaughlin argues that the trial court erred, as a matter of law, in holding that Stupp was not unlawfully on the property.

While McLaughlin concedes that Stupp had implied consent to enter upon McLaughlin's premises for the purpose of delivering a newspaper, since McLaughlin was a newspaper subscriber, he contends that that consent did not extend beyond the ingress, access and egress necessary to accomplish the delivery of the newspaper. Thus, when Stupp and his grandmother decided to leave McLaughlin's property by way of the driveway and alley to the rear of the property, for their own convenience, they exceeded the scope of the implied consent to be upon McLaughlin's property; therefore, according to McLaughlin, they became trespassers at that point, and were no longer lawfully upon his property.

The prosecutor argues that "unlawfully" for purposes of the affirmative defense specified in R.C.G.O. 91.50(D)(2) necessarily implies a *criminal* trespass, and cites those provisions of the city of Dayton Revised Code of General Ordinances pertaining to criminal trespass to show that Stupp and his grandmother were not criminal trespassers.

We find it unnecessary to determine whether "unlawfully" as used in R.C.G.O. 91.50(D)(2) necessarily implies a criminal trespass. Even if a mere trespass for civil liability purposes is deemed to be "unlawful" in this context, we conclude that Stupp was not a trespasser in that sense.

It is undisputed that Stupp and his grandmother were not trespassers when they entered upon the property, since they had implied consent to do so. We agree with the following statement in *Cochran* v. *Dowd* (C.P. 1962), 91 Ohio Law Abs. 247, 254, affirmed (1962), 91 Ohio Law Abs. 256:

"The duty to keep premises safe for invitees extends to all of the operations of the premises which are included within the invitation and which it is necessary or convenient for the invitee to visit or use in the course of business for which the invitation was extended or at which his invitation was extended or at which his presence should therefore reasonably be anticipated or to which he is allowed to go."

Stupp and his grandmother went upon McLaughlin's property for a legitimate purpose, for which they had implied consent. In leaving the property, they found it more convenient to go by way of the driveway and rear alley, rather than back the way they came. McLaughlin could reasonably have anticipated that a newspaper carrier would follow such a route, since he had interposed no barrier or warning sign along that route. Although there was a sign that said "Guard Dog on Duty," that sign was posted at the front of McLaughlin's property. At most, it might have implied a lack of consent to enter upon McLaughlin's property at all, but since McLaughlin by subscribing to the newspaper obviously gave implied consent for a newspaper carrier to come upon his property, the sign cannot reasonably

be construed as having negated that implied consent.

Therefore, we conclude that Stupp and his grandmother were not trespassers when they began exiting McLaughlin's property by way of the driveway.

Furthermore, a "trespasser" has been defined for civil purposes as a "person who enters (and remains) on the premises of another without permission, either express or implied, and without consent or invitation (or other right), for a purpose of convenience of his own or for no apparent purpose." 1 Ohio Jury Instructions, Section 1301 (6). Where a person enters upon property as an invitee, but exceeds the limits of the invitation, his status is changed from invitee to licensee. *Clary* v. *McDonald* (1963), 120 Ohio App. 8, 12, 28 O.O. 2d 169, 171, 200 N.E. 2d 805, 808.

Where an invitee remains on property for purposes of his own, outside the scope of the invitation, we conclude from the foregoing authority that he does not thereby become a trespasser, at least in the absence of entering upon some clearly delimited part of the premises upon which his entry is not permitted. In the case before us, Stupp and his grandmother had the owner's implied permission to be upon the property, and they did not enter upon a different part of the property with respect to which their presence had been prohibited, either expressly or by clear implication. Therefore, we conclude that Stupp was not unlawfully upon the property, within the contemplation of the affirmative defense provided for in R.C.G.O. 91.50(D)(2).

McLaughlin's first assignment of error is overruled.

### III

McLaughlin's second assignment of error is as follows:

"The trial court erred in convicting appellant of two violations of R.C.G.O. Section 91.50, where the intent and conduct constituting one violation is identical to that constituting the second violation thereby violating the prohibition under R.C. 2941.25 against convicting an accused of allied offenses of similar import."

At the outset, the prosecutor argues that this assignment of error must be overruled because McLaughlin failed to raise it at trial. An error in the trial court may be treated as plain error, requiring reversal, even in the absence of the contemporaneous objection, if it is an error without which the result of the trial clearly would have been otherwise. *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804.

If it was error for the trial court to have found McLaughlin guilty and to have sentenced him with respect to both offenses, the result of the trial would clearly have been different had the error not occurred. Therefore, we conclude that this is a plain error situation, and we reach the merits of McLaughlin's claim.

R.C. 2941.25 provides as follows:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In this case, the two offenses were violations of R.C.G.O. 91.50(A)(5) and 91.50(B). The first of these provides, in pertinent part, as follows:

"No person owning, keeping, pos-

sessing, harboring, maintaining or having the care, custody, or control of a dog shall suffer or permit such dog to: * * * [b]ite or otherwise cause physical harm to any other person, domestic animal or feline."

The second of these two criminal provisions in the ordinance is as follows:

"No person shall own, keep, possess, harbor, maintain or have the care, custody, or control of a vicious dog within the city."

"Vicious dog" is defined in R.C.G.O. 91.02(H) as "[a]ny dog that bites or causes physical harm to a human being, domestic animal, or feline, on one or more occasions."

One requirement for the invocation of the provision in R.C. 2941.25 prohibiting multiple convictions is that the two offenses must have elements that correspond to such a degree that the commission of one offense will result in the commission of the other. *State* v. *Talley* (1985), 18 Ohio St. 3d 152, 154, 18 OBR 210, 211, 480 N.E. 2d 439, 441. In this connection, the elements of the offenses should not be viewed abstractly, but should be viewed with reference to the facts of the particular case. *State* v. *Torres* (1986), 31 Ohio App. 3d 118, 31 OBR 204, 508 N.E. 2d 970; *State* v. *McKinney* (Oct. 22, 1987), Miami App. No. 87-CA-20, unreported.

There was no evidence that McLaughlin's dog had bitten or caused physical harm to a human being, domestic animal or feline, on any occasion other than the biting of the victim, Stupp, in this case.

Thus, under the circumstances of this case, the elements of the R.C.G.O. 91.50(B) offense were wholly subsumed within the elements of the R.C.G.O. 91.50(A)(5) offense. The first offense required that: (i) McLaughlin owned, kept, possessed, harbored, maintained, or had the care, custody or control of a dog within the city; and (ii) that the dog bit or caused physical harm to a human being, domestic animal, or feline. The second offense required the same elements, plus the additional element that the biting or causing of physical harm was upon McLaughlin's sufferance or with his permission.

The only additional requirement for the invocation of R.C. 2941.25 is that the same animus led to the commission of both of the offenses. *State* v. *Talley, supra.* In the case before us, it is obvious that the same animus led to the commission of both offenses. Essentially, McLaughlin was criminally negligent in tying his dog to a tree near which persons legitimately upon his premises were likely to pass. The same negligence led directly to the violation of both criminal provisions.

We conclude that the two criminal violations were allied offenses of similar import, so that it was not proper to convict McLaughlin of both of them. Accordingly, McLauglin's second assignment of error is sustained, his conviction for violating R.C.G.O. 91.50(B) will be reversed, and he will be ordered discharged with respect to that charge.

IV

McLaughlin's first assignment of error having been overruled, and his second assignment of error having been sustained, his conviction and sentence for violating R.C.G.O. 91.50(A)(5) will be affirmed; his conviction and sentence for violating R.C.G.O. 91.50(B) will be reversed; and McLaughlin will be ordered discharged with respect to the charge of having violated R.C.G.O. 91.50(B).

*Judgment affirmed in part
and reversed in part.*

KERNS, P.J., and WOLFF, J., concur.