George and Mary Wysor appeal from the judgment of the Montgomery County Common Pleas Court which granted summary judgment to defendants, Cynthia Ricker and Old National Trail Riding Center.
On June 10, 1995, Mary and George Wysor visited the National Trail Riding Stables in order to take their granddaughter, Kimberly, on a pony ride. A private residence, owned by the Montgomery County Park District and rented by Cynthia Ricker, was located adjacent to the National Trail Riding Stables. After the Wysors took their granddaughter on a pony ride, the Wysors and their granddaughter went to the outdoor horse area, adjacent to the picnic table area in order to view the horses. The outdoor horse area and the picnic table area were located on property owned and controlled by Old National Trail Riding Center. The Wysors' granddaughter then went off to play and the Wysors remained in the same general area where the outdoor horses were kept on Old National Trails' property.
Mr. Wysor subsequently left the property owned by Old National Trail Riding Center and entered the property owned by the Montgomery County Park District and occupied by Cynthia Ricker. As Mr. Wysor walked across the grassy area owned by the Montgomery County Park District and occupied by Cynthia Ricker, Mr. Wysor was tripped by the leash of a dog owned by Cynthia Ricker's daughter and cared for by Cynthia Ricker. The dog, Logan, had been tied by a leash to a light post.
Ms. Ricker did not see Mr. Wysor walk from the property owned by Old National Trail Riding Center to the grassy area owned by the Montgomery County Park District and occupied by Ms. Ricker. Ms. Ricker did not realize that Mr. Wysor was on her property until she heard a "pop" and noticed him sitting on the ground. Mr. Wysor sustained a broken leg as a result of the accident.
On January 13, 1997, the Wysors filed a Complaint for personal injuries against Cynthia Ricker, Old National Trail Riding Center, United Health Care of Ohio, and Anthem Blue Cross/Blue Shield. Plaintiffs-Appellants alleged that a dog kept and/or harbored by Cynthia Ricker and Old National Trail Riding Center caused injuries to George Wysor when the dog allegedly became excited and wrapped its leash around his legs causing him to fall to the ground. Plaintiffs further asserted that Cynthia Ricker was negligent and that her actions violated Section 955.28(B) of the Ohio Revised Code. On May 2, 1997, a Motion to Elect was made requesting that the trial court require plaintiffs to elect between proceeding under the common law or under R.C. § 955.28(B). In response, on May 9, 1997, the Wysors filed an Election of Remedy which stated that "Plaintiffs, George Wysor and Mary Helen Wysor, by and through counsel, and hereby elects to pursue remedy solely under the O.R.C. § 955.28."
After both parties filed competing summary judgment motions, the trial court sustained the defendants' summary judgment motions. The trial court stated the following:
 If Wysor is deemed a trespasser as a matter of law, it would be an absolute defense for Defendant Ricker under O.R.C. § 955.28.
 Generally, a trespasser has been defined for civil purposes as "a person who enters (and remains) on the premises of another without permission, either expressed or implied, and without consent or invitation (or other right) for a purpose of convenience of his own or for no apparent purpose." City of Dayton v. McLaughlin (1988), 50 Ohio App.3d 69, 552 N.E.2d 965. A trespass can be either civil or criminal; either would be a defense to a dog bite case. 1995 WL 421864 Padgett v. Sneed, (Ohio App. 1 Dist. 1995).
 In this case, Cynthia Ricker is renting her property from the five parks. She has not given Plaintiff Wysor or other patrons of Old National permission (either expressed or implied) to enter the land she occupies. Therefore, when George Wysor became entangled with Ricker's dog, he was trespassing on the property Ricker is renting. Construing the evidence in a light most favorable to the Plaintiff, the evidence shows that George Wysor was a trespasser on the Ricker's property as a matter of law. Accordingly, Defendant Ricker has presented an absolute defense to the present claim.
In their first assignment of error, the Wysors contend the trial court erred in determining that no genuine issue of material fact existed as to whether George Wysor was a trespasser.
Appellant argues that the plain language of R.C. 955.28
indicates the General Assembly intended only criminal trespass would bar relief under R.C. 955.28. That section provides:
 The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer. . . . (Emphasis ours).
Appellants argue that assuming that this court would interpret the statute to exclude strict liability of a dog owner to a "civil" trespasser, they argue that George Wysor was not a civil trespasser. The Wysors argue there was at least a genuine issue of material fact whether George Wysor was on Ms. Ricker's property with her implied consent.
Appellants argue that the trial court erred in granting summary judgment to Old National when sufficient evidence existed that Old National failed to inspect its property and properly warn Mr. Wysor of the danger present from its patrons wandering onto the property leased by the Park District to Ricker. Appellants also argue that the trial court erred in granting summary judgment on the issue of whether Old National was a "harborer" of the dog as contemplated by R.C. 955.28.
Ms. Ricker argues that the trial court properly granted her summary judgment because there was undisputed evidence that George Wysor was a civil trespasser at the time of his injury. She argues the trial court properly interpreted R.C. 955.28(B) as including civil trespass as a defense to strict liability under that statute. Finally, Ms. Ricker argues that there was no evidence she "impliedly" consented to Mr. Wysor entering her property.
The general rule is that errors are considered by the court of appeals only if they were raised initially in the trial court. State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78. In this case, the appellants argue that the trial court erred in its interpretation of R.C. 955.28. Appellants argue the plain meaning of the statute is that only criminal trespass precludes strict liability from being applied to a dog owner whose dog injures a trespasser. This argument not only, was not made in the trial court, the appellants argued that Mr. Wysor was not a civil trespasser. (See appellant's memorandum in opposition to defendant's motion for summary judgment at page 6). As such this argument must be considered waived.
We will consequently address whether the evidence demonstrates without dispute that Mr. Wysor was a civil trespasser. A trespasser is for civil purposes a person who enters or remains on the premises of another without permission either express or implied.
Appellants argue that the evidence demonstrated the patrons of the riding stables customarily walked onto the grassy area leased by Ms. Ricker and thus it was Ms. Ricker's duty to make clear her intent that strangers stay off her property. In other words, appellants argue that Mr. Wysor was not a trespasser when he was injured because the consent of the possessor of the premises to his entry may be implied from the local custom of how the property was used.
In support of their argument, appellants cite the cases ofKeesecker v. G.M. McKelvey Co. (1941) 68 Ohio App. 505 andGerrard v. McComas (1982), 50 Ohio App.3d 69. In Keesecker the court of appeals held that a merchant's delivery servant, entering another's premises in good faith to ascertain whether parcel he had to deliver should be delivered to occupants of the house thereon was at least a bare licensee. The court held that established usages in communities wherein merchants maintain delivery service entitled them to assume that the possessor is willing to permit the deliverymen to enter to determine whether person who purchased goods sought to be delivered lives on the premises, unless a particular possessor expresses unwillingness to admit them.
In Garrard v. McComas, supra, the plaintiff approached a trailer she mistakenly believed was owned by her brother-in-law. As plaintiff approached, the defendant's two dogs chased and attached her and she fell and broke her wrist.
The trial court held that the plaintiff could not recover because she was a trespasser. The court of appeals reversed, finding there was at least a genuine issue of fact of whether the plaintiff was a licensee; that is, one whose presence is upon the land for his own purpose, and to whom the privilege of entering is extended as a mere personal favor to the individual whether by express or tacit consent or as a matter of general or local custom.
Judge McCormac wrote on behalf of the court:
 The last paragraph of Comment e to Section 330, states in relevant part, as follows:
 "In determining this account must be taken of customs prevailing in the community. The well-established usages of a civilized and Christian community' entitle everyone to assume that a possessor of land is willing to permit him to enter for certain purposes until a particular possessor expresses unwillingness to admit him. Thus a traveler who is overtaken by a violent storm or who has lost his way, is entitled to assume that there is no objection to his going to a neighboring house for shelter or direction. So too, if there is a local custom for possessors of land to permit others to enter it for particular purposes, residents in that locality and others knowing of the custom are justified in regarding a particular possessor as conversant with it and, therefore, in construing his neglect to express his desire not to receive them as a sufficient manifestation of a willingness to admit them. * * *." Id. at 174.
 In this case, the record indicates that Barbara Garrard thought that McComas' trailer belonged to her brother-in-law. There is no difference in legal effect for this type of mistaken fact from the situation where someone has lost her way and goes to a neighboring house for directions. There was thus evidence of implied consent by custom for Barbara Garrard to approach the McComas' trailer. There was no evidence of warning signs to the contrary. Certainly there was at least a genuine issue of fact as to whether she was a trespasser or a licensee. It is probably a matter of judicial notice in this community that a person has implied consent, absent an express warning contrary, to approach a residence to ask for directions or to find out if she is at her friend's home. The alternative of remaining at the curb honking or hollering is not attractive.
Appellants note that Ms. Ricker knew the people visiting the stables often walked onto the grassy area in front of her rental home and had to be warned that this was private property. Appellants point to the testimony of Cynthia Ricker in her deposition:
 Q. To your knowledge were people ever told by the Bihns or anyone working for Old National to stay off the grass surrounding your house?
A. Yes.
 Q. Can you tell me when that was done, if you recall?
 A. Mostly when I wasn't there, I was told it was done. The office was mostly ran by Jackie most of the time, and there were times too when I just maybe have gotten home and got out, went over and talked to her, and she'll see somebody walk over to the house, and she'll tell them, that's a private house, don't go over there, you need to come over here. I've witnessed her do it. She's told me she's done it more on other occasions. I don't have verification of that, but I've witnessed her do it a couple of times.
 Q. When you were at home, did you ever tell people not to come on to the grassy area surrounding your house?
A. Yes.
Q. And when would you tell people to do that?
 A. Mostly before they put this fence up, because there didn't used to be a fence there, so people would come from the parking lot right through the front yard to come up rather than coming up the drive. And so whenever I was there, I would see them, I would say, excuse me, you're not supposed to be in this area. Walk up the driveway to the bar. That is the area you're supposed to be in. That's why they built this fence to stop that flow of traffic through my yard. (Indicating).
Q. When did they build this fence?
A. I don't remember.
Q. Was it prior to June of 1995?
A. Yes.
 Q. So that pretty much stopped the traffic then from cutting across your yard here, and then they would have to go down the driveway; is that right?
A. Yes.
 MR. DEAN: And just so the record is clear, let's just make sure it's clear that we are referring to the fence between the parking lot and the rear of he house.
Appellants note that the evidence demonstrated that Ms. Ricker never posted signs warning patrons of the riding stable that the grassy area upon which Mr. Wysor was injured was private property.
Appellants argue that the homogenous nature of the surroundings created an impression that Mr. Wysor had the implied consent of Ms. Ricker to cross the grassy area and thus he was a licensee at the time of his injury.
Appellee Ricker argues that appellant Wysor was a trespasser at the time of his injury because she never invited him onto her property and did not know of his presence on her property until after his injury. She also argues that Ohio law does not support appellants' "habit and usage" theory, and even if this court does, the evidence does not support that she impliedly consented to the victim's presence on her property.
Although Ricker argues that Keesecher v. G.M. McKelvey Co.
was reversed at 141 Ohio St. 162, the essential reasoning behind the opinion was not reversed. The Ohio Supreme Court held that the court of appeals erred in holding that the deliveryman was not a trespasser as a matter of law. The supreme court merely held that under the circumstances of the case the question of whether the deliveryman was a trespasser or a licensee was a matter for the trier of facts. 141 Ohio St. 162, at 168.
Appellee argues that while consent may be implied from acquiescence to the continued use of property by the public, mere toleration to a continued intrusion is not of itself, a manifestation of implied consent. Citing, Bogdston v. NorfolkSouthern Corp. (1991), 73 Ohio App.3d 727, 730. In that case, the Ross County Court of Appeals held that evidence that dirt pathways led to railroad trestle bridge on both sides of a creek and that persons used trestle bridge to cross creek did not establish that the railroad acquiesced in use of the bridge by the public, for purposes of determining whether persons injured on the bridge were trespassers.
Judge Stephenson explained the court's decision inBoydston further:
 Appellants contend that appellees herein so acquiesced to the use of the bridge. They produced summary judgment evidence which showed that there were dirt pathways leading to the bridge on both sides of Paint Creek. Appellants further produced affidavits of several persons who stated that they had used the trestle bridge in the past to cross Paint Creek. Finally, appellants point out that no signs were posted stating that the bridge was private property and trespassing was prohibited.
 We disagree that appellees' inaction with respect to trespassers was a manifestation of consent to the public to use the bridge as a walkway. At one time in Ohio it appears that a railroad would be deemed to have acquiesced to the use of its property by the habitual use of its tracks by the public. See, e.g., Harriman, supra. However, the more modern approach in cases involving railroads is that "the mere toleration of continued intrusion where objection or interference would be burdensome or likely to be futile * * * is not in itself and without more a manifestation of consent." Prosser 
Keeton, The Law of Torts, supra, at 414, Section 60. The Restatement of the Law 2d, Torts, supra, at Comment c, sets forth the following reasons for this approach:
 "A failure to take burdensome and expensive precautions against intrusion manifests only an unwillingness to go to the trouble and expense of preventing others from trespassing on the land, and indicates only toleration of the practically unavoidable, rather than consent to the entry as licensee. Even a failure to post a notice warning the public not to trespass cannot reasonably be construed as an expression of consent to the intrusion of persons who habitually and notoriously disregard such notices."
Judge Stephenson omitted the remaining comment by Professor Keeton:
 The real basis of liability to such "tolerated intruders" would seem to be only the ordinary duty to protect another, where the risk for which the defendant is responsible outweighs the convenience of guarding against it.
Thus even if the record would support a finding that Ms. Ricker tolerated intruders on her property, her duty to those trespassers would be to exercise reasonable care to protect them from an unreasonable risk of injury.
The record also does not support a finding that Mr. Wysor was a licensee by customs prevailing in the community. There was no evidence that Ms. Ricker customarily permitted patrons of the riding stables to trespass onto her property. Ms. Ricker testified that when she observed trespassers on her property she would inform them "they were not supposed to be in this area."
There was no genuine issue of material fact that George Wysor was a trespasser at the time of his injury and thus Ms. Ricker was not strictly liable for his injuries. The first assignment of error is overruled.
In their second assignment of error, the appellants argue that the trial court erred in granting summary judgment to Old National Riding Trail Center in that Old National failed to inspect its property and warn George Wysor of possible harm.
Appellants argue that George Wysor was an invitee and Old National owed a duty of ordinary care in maintaining the premises in a reasonably safe condition and a duty to warn its patrons of latent dangers and to take reasonable precautions to protect its patrons from dangers which are foreseeable from the arrangement or use of its land.
We agree with Old National's argument that there was no evidence in the record to support a claim that Old National's premises were not a reasonably safe condition. There is also no evidence that Old National failed to inform Mr. Wysor of any latent danger on property leased to Ms. Ricker by the Park District.
The evidence is undisputed that the dog, Logan, was tethered to the lamp post in plain view of Mr. Wysor. Ms. Ricker testified she saw Mr. Wysor watching Logan running on the tethered line and choking himself. She even observed Mr. Wysor laughing at the dog's antics. Ms. Ricker testified that after she saw Mr. Wysor on the ground, she heard him say it was his own stupid fault. She said Mr. Wysor said he didn't know why he walked through there. He said he knew Logan was there. (Ricker Dep. At 54-55, 93). George Wysor, for his part, testified he did not recall specifically looking at the dog before the accident, but that was his usual custom when he visited the riding stable. (George Wysor Dep. At 75).
Finally, appellants contend that Old Trail's failure to post signs that indicated the grassy area was private property deprived George Wysor of the remedy found in R.C. 955.28
because he became a trespasser upon his entry into that area. In effect, appellants argue that Old National's failure to post signs indicating the limits of its property or to fence in the leased property rendered them strictly liable for the injury caused by Ms. Ricker's dog. We are not prepared to require property owners to take such precautions in order to avail themselves of the trespassing defense found in R.C. 955.28. The appellant's second assignment of error is overruled.
In their third assignment, appellants contend the trial court erred in granting summary judgment that Old National was not a "harborer" of the dog that caused Mr. Wysor's injuries. Appellants argue that since Old National was in control of the leased premises, it was a harborer of the dog. Appellants point out that Old National received mail at the address leased to Ms. Ricker and Old National and their patrons frequently crossed the leased property. Appellant also argues that the dog was tethered in a common area for which Old National controlled. Appellant argues that Old National's mere acquiescence to the criminal's presence on the leased premises is sufficient for their liability to attach. Citing,American States Ins. Co. v. Gullerman (1966), 108 Ohio App.3d 547,557.
A "harborer" is one who has possession and control over the premises where the dog lives and silently acquiesces in the dog's presence. Flint v. Holbrook (1992), 80 Ohio App.3d 21. A landlord or vendor of property does not have such possession and control. Id.
We agree with the appellee that its use of a common mail box with its tenant did not signify the type of possession and control of the premises to make it a "harborer" of the dog. There was also no evidence that Logan was a wild animal. At common law, a harborer of a "wild animal is subject to the same liability as if he were in possession of it." American StatesIns. Co. v. Gullerman, supra, at 556. There simply is no material in fact in dispute that Old National did not have possession and control of the premises where Logan was tethered to the lamp post. The third assignment of error is accordingly overruled.
The judgment of the trial court is Affirmed.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Diane E. Hanson Steven O. Dean John G. Witherspoon, Jr. Hon. John Petzold