The STATE of Ohio, Appellee,

v.

McINTOSH, Appellant.

[Cite as *State v. McIntosh* (2001), 145 Ohio App.3d 567.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000695.

Decided Aug. 31, 2001.

---

**28.** See *State v. Zamorski, supra.*

572

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*Jon Paul Rion,* for appellant.

WINKLER, Judge.

Following a jury trial, appellant Thomas McIntosh was convicted of trafficking in marijuana, conspiracy, and two counts of possession of marijuana. He appeals, raising twelve assignments of error. Because we sustain in part his first assignment of error, we vacate the sentence in part and remand the case for resentencing in accordance with this decision.

## Background Facts

On August 26, 1999, police officers investigated a break-in at appellant's business. At the scene, officers observed marijuana residue, or "shake," that is often found .when larger quantities of marijuana are repackaged in smaller amounts. Officers also found documents bearing the names of appellant and Todd Klein, one of eight co-defendants, as well as receipts for stays in Arizona hotels.

Officer Christopher Conners of the regional narcotics unit had suspected that appellant and Klein were involved in large-scale marijuana distribution. Officer Conners had used Klein in the past as a paid confidential informant. Conners

began conducting surveillance on appellant's home and business, as well as those of Klein and Denver Baehr.

On February 2, 2000, Officer Conners received information suggesting that a shipment of marijuana had arrived at Klein's home, and that appellant had been seen at Klein's home. On February 11, 2000, Officer Conners saw appellant arrive at Klein's home, so he called for further police assistance. Shortly thereafter, Conners saw Klein leave his home.

Officers followed Klein as he drove to another location where Klein gave some duffle bags to Carl Wesley. Then the officers saw Wesley transfer the duffle bags to Keiron Ashurst. The duffle bags were not recovered by the police.

Meanwhile, Officer Conners saw Klein return to his home. Later that same day, Klein left his home with more duffle bags destined for Denver Baehr. Police officers stopped Klein a few minutes afterward and discovered that the bags contained marijuana, and that Klein was carrying $18,900 in cash.

Upon his arrest, Klein told Officer Conners that the bags held sixty-eight pounds of marijuana, packaged in approximately one-pound amounts. Klein told Officer Conners that the $18,900 represented payment from Wesley and was to be turned over to appellant.

Klein agreed to cooperate with police in the arrest of others involved in the marijuana-distribution operation. The police set up a "controlled delivery" in which Klein was to take the marijuana to Baehr. Audiotapes recorded the new delivery details when Klein failed to show as originally planned. As a result, the police recovered from Baehr twenty-three pounds of marijuana, $55,000 in cash, and a ledger recounting Baehr's drug transactions. The remaining forty-five pounds of the original sixty-eight pounds was recovered from Mark Kramer, who was stopped by police shortly after having received it from Baehr. Based on Officer Conners's experience, $55,000 would have been about the amount expected for a sale of forty-five pounds of marijuana.

Then officers set up a "controlled delivery" during which Klein would return to appellant a portion of the marijuana that the officers had seized from Klein during his February 11 arrest, forty-eight pounds of the original sixty-eight pounds. Klein explained the failed Baehr sale to appellant by saying that he had called off the sale because Baehr had complained again about the terms. Klein was to return Baehr's portion of the marijuana to appellant, who would see that it got to Jeff Geraci. Tape-recorded telephone conversations revealed an arrangement by which Klein would return the forty-eight pounds of marijuana to appellant at his home. In the meantime, officers obtained a search warrant for appellant's home.

On February 13, 2000, Officer Conners packed four duffle bags with the marijuana. He also gave Klein the $18,900 that police had recovered from him at the time of his arrest. Klein was then videotaped as he carried the duffle bags and money into appellant's home. The tape showed appellant holding the plastic bag containing the $18,900. Klein's conversations with appellant about their drug activity were also audiotaped at the same time.

Officers immediately executed the search warrant at appellant's home, where they recovered the controlled-delivery marijuana and money. Officers also found, among other items, "pay and owe" records discussed on the audiotape and a credit-card bill for purchases made in Arizona.

At appellant's trial, Klein's testimony was consistent with that of Officer Conners. He testified that he had known appellant for over ten years but that they did not participate in marijuana distribution until March 1999, when both were experiencing business cash-flow problems. Klein testified that appellant had told him that he used to obtain marijuana in Arizona, so eventually the two men arranged to go to Arizona to re-establish appellant's contacts for buying marijuana.

Klein testified that he had known co-defendant Wesley for as long as he had known appellant. Appellant had told him during one Arizona trip that he and Wesley had been partners in the same type of marijuana operation but that the two men had had a falling out. Klein received permission from appellant to conduct business with Wesley, but was warned that, should Wesley be arrested, Wesley would turn on Klein. Appellant told Klein that he and Wesley had stolen from drug suppliers numerous times.

Klein further testified that appellant's practice was to refrain from breaking down or storing marijuana at his home. On February 11, 2000, Klein transferred to appellant two hundred pounds of marijuana that he had just brought back from Arizona. Appellant took the marijuana to Klein's home, while Klein bought supplies to repackage it. Klein, appellant, and Jeff Geraci, repackaged the marijuana. Both Geraci and appellant left Klein's home with fifty pounds each, leaving Klein with one hundred pounds. Klein later made a delivery to Wesley and was on his way to sell the rest to Baehr when police stopped him.

Wesley testified that he had participated in drug-selling activity for fifteen years. Six years into his drug trafficking, appellant had approached him to buy directly from him. Wesley estimated that their dealings continued from 1991 to 1996, and that he would buy about sixty pounds of marijuana per month from appellant, typically in twenty-pound increments. He also described his participation with appellant in the theft of marijuana from a drug dealer in a Sharonville, Ohio hotel.

## Procedural History

On February 24, 2000, a fourteen-count indictment was filed, charging appellant and eight others with drug offenses. Appellant was charged in four of those counts. In count one, appellant was charged with conspiracy to engage in trafficking or possession of marijuana. In count two, appellant was charged with trafficking in marijuana in excess of twenty thousand grams on February 11, 2000. In count three, appellant was charged with possession of marijuana in excess of twenty thousand grams on the same date. In count seven, appellant was charged with possession of marijuana in excess of twenty thousand grams on February 13, 2000.

A jury found appellant guilty of all four counts. The trial court sentenced appellant to eight years in prison for counts two, three, and seven, and ordered that the terms be served consecutively, for a total of twenty-four years.[1]

## Assignments of Error

In his first assignment of error, appellant contends that his convictions for trafficking and two counts of possession should have been merged for sentencing purposes under R.C. 2941.25 because they involved allied offenses of similar import. Appellant argues that the marijuana upon which each of the three counts was based was the same, and that he had possessed it solely for the purpose of selling it.

R.C. 2941.25 provides the following:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

A two-step inquiry determines whether offenses are allied and of similar import: (1) do the elements of the offenses correspond to such a degree that commission of one results in commission of the other and (2) were the offenses part of the same conduct, or was there a separate animus for each crime?[2]

---

1. For sentencing purposes, the first count of conspiracy was merged with the trafficking and possession counts.

2. See R.C. 2941.25; *State v. Rance* (1999), 85 Ohio St.3d 632, 636, 710 N.E.2d 699, 703; *State v. Bybee* (1999), 134 Ohio App.3d 395, 400–401, 731 N.E.2d 232, 236.

Under this analysis, it is clear that the statutory elements of the offenses of trafficking and possession do not correspond to the extent required to prohibit multiple convictions.[3]

We turn our attention to the two possession counts. Count three of the indictment involved the possession of marijuana on February 11, 2000, while count seven of the indictment involved possession of the same marijuana on February 13, 2000. The state does not challenge the fact that the marijuana for each of these counts was the same. We conclude that (1) the elements of the possession offenses charged in each count were identical, and (2) the possession counts for February 11 and for February 13, 2000, were part of the same continuing pattern of conduct by appellant and did not demonstrate a separate animus.[4] While appellant could have been found guilty of both possession counts, the trial court should have sentenced him for but one.

Therefore, we sustain appellant's first assignment of error to the extent that it challenges the multiple sentences for two possession counts, but we overrule the assignment of error to the extent that it challenges the separate sentence for the trafficking conviction.

In his eighth assignment of error, appellant contends that his twenty-four-year sentence was cruel and unusual punishment in light of the sentences received by the co-defendants. We are unable review appellant's claim of disparate sentencing, as only the record for his case has been transmitted to this court and not that of any other co-defendant. App.R. 9(B), 10(A), and 16(A)(3) impose a duty on an appellant to provide a complete record for our review prior to submission of the case. When portions of the record necessary for resolution of assigned errors are omitted from the record, this court has no choice but to presume the validity of the lower court's proceedings and affirm.[5] Because the record before this court fails to reflect any disparate sentencing error, appellant's eighth assignment of error is overruled.

In two related assignments of error, the second and third, appellant contends that the trial court erred when it admitted testimony from two co-defendants, Wesley and Klein, that he had sold drugs on occasions not covered in

---

3. See, *e.g., State v. Childs* (2000), 88 Ohio St.3d 558, 562, 728 N.E.2d 379, 383–384; *State v. Johnson* (2000), 140 Ohio App.3d 385, 390, 747 N.E.2d 863, 867.

4. See *State v. Rance, supra,* at 636, 710 N.E2d at 703; *State v. Bybee, supra,* at 400–401, 731 N.E.2d at 236.

5. See *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384, 385; *State ex rel. Montgomery v. R & D Chem. Co.* (1995), 72 Ohio St.3d 202, 203–204, 648 N.E.2d 821, 822.

the indictment, and that he was denied a fair trial because testimony was given by Wesley that they had participated in a theft from another marijuana dealer.

■ Relevant evidence is admissible, except where the probative value of the evidence is substantially outweighed by its prejudicial effect.[6] The admission of relevant, other-acts evidence is permitted, not for proving the defendant's propensity for criminal behavior but to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[7] The record shows that, in his opening statement, defense counsel's strategy was, in part, to raise the issue of entrapment. The essence of an entrapment defense is whether the defendant was predisposed to commit the offense.[8] In *State v. Doran*, the Ohio Supreme Court held that a defendant's predisposition to engage in illegal drug activity was admissible and provided a non-exhaustive list for determining relevance on the issue of predisposition.[9] In reviewing the record in this case, we hold that the trial court did not err in admitting the testimony of Wesley and Klein, when that testimony was illustrative of appellant's predisposition to commit the charged offenses, and when the testimony conformed to Evid.R. 404(B) and R.C. 2945.59. Accordingly, we overrule appellant's second and third assignments of error.

■ In his fourth assignment of error, appellant contends that he was denied a fair trial when the trial court failed to redact a portion of a tape recording containing a racial slur. The racial slur was made by appellant to Klein about a contestant appearing in a television show during the taped telephone conversation concerning the return to appellant of a portion of the marijuana that had been destined for Baehr. While permitting the jury to hear appellant's racial slur had no relevance to the charged offenses, based on the record, it was not so unfairly prejudicial that appellant was deprived of a fair trial. Appellant's fourth assignment of error is overruled.

■ In his fifth assignment of error, appellant contends that the trial court erred when it failed to grant his motion to continue the trial date. In deciding a motion for a continuance, the trial court is to consider various factors.[10]

---

6. See Evid.R. 403(A).

7. See Evid.R. 404(B); see, also, R.C. 2945.59; *State v. Broadnax* (May 22, 1996), Hamilton App. Nos. C–940947 and C–940948, unreported, 1996 WL 267511.

8. See *State v. Doran* (1983), 5 Ohio St.3d 187, 190, 5 OBR 404, 449 N.E.2d 1295.

9. *Id.*

10. See *State v. Unger* (1981), 67 Ohio St.2d 65, 67–68, 21 O.O.3d 41, 423 N.E.2d 1078, 1080 (length of the delay requested, whether other continuances have been requested and granted,

The grant or denial of a motion for a continuance is entrusted to the discretion of the trial court and will not be reversed absent an abuse of discretion.[11] The term "abuse of discretion" means more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable.[12]

The appellant must show how he was prejudiced by the denial of the continuance before there can be a finding of prejudicial error.[13] At appellant's request, the trial court had previously granted continuances for two pretrial settings. On May 26, 2000, the original trial date of August 14, 2000, was set to accommodate defense counsel's schedule. The trial court further continued appellant's trial from August 14 to August 23, because defense counsel was in trial in another county. Appellant makes no allegation that he was not vigorously and effectively represented by his counsel at trial. We cannot say that the trial court abused its discretion by denying appellant's request for another trial continuance. Moreover, appellant has failed to show how he was prejudiced by the denial of a continuance. Accordingly, appellant's fifth assignment of error is overruled.

In his sixth assignment of error, appellant contends that the trial court's decision to limit cross-examination of two co-defendants denied him the opportunity to confront the witnesses against him. While the Sixth Amendment to the United States Constitution and the Ohio Rules of Evidence guarantee the right of a criminal defendant to confront the witnesses against him for the biases they may hold, the trial court retains wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, or relevance of the inquiry.[14] While cross-examination itself is a matter of right, the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.[15] Both Wesley and Klein testified that they had received no "deals" for their testimony. The trial court foreclosed further cross-examination directed

---

the inconvenience to the litigants, witnesses, counsel, and the court, whether the requested continuance is for legitimate purposes, whether the requesting party has contributed to the circumstance giving rise to the continuance, and all other relevant factors).

11. See id. at 67, 21 O.O.3d 41, 423 N.E.2d at 1080; State v. Broom (1988), 40 Ohio St.3d 277, 288, 533 N.E.2d 682, 695.

12. See State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144, 149.

13. See State v. Broom, supra, at 288, 533 N.E.2d at 695.

14. See State v. Smith (Aug. 3, 1994), Hamilton App. No. C–930414, unreported, 1994 WL 398804.

15. See State v. Green (1993), 66 Ohio St.3d 141, 148, 609 N.E.2d 1253, 1259.

towards challenging their denials. Even if the foreclosure of questioning was an abuse of discretion, lack of an opportunity to fully cross-examine is harmless error when there is overwhelming, untainted evidence supporting a conviction.[16] A review of the record, which includes video and audiotapes, makes it clear that there was overwhelming evidence supporting appellant's convictions. Moreover, the jury was instructed that the admitted complicity of a witness might affect his credibility, make his testimony subject to grave suspicion, and require that it be weighed with great caution. Accordingly, appellant's sixth assignment of error is overruled.

In his seventh assignment of error, appellant contends that a constitutional violation occurred when a defense witness was refused permission to testify. Appellant challenges the trial court's denial of testimony from Steven Burkhart about dealings with Patrick Brown, a brother-in-law of co-defendant Klein, on the grounds of relevancy.

Relevant evidence is that which tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[17] "The admission or exclusion of relevant evidence rests with the sound discretion of the trial court."[18] Even if Burkhart's limited testimony was about Brown driving an inordinate number of miles between Ohio and Arizona, that did not necessarily make the determination that appellant possessed or trafficked in marijuana more or less probable.[19] Accordingly, appellant's seventh assignment of error is overruled.

In his ninth assignment error, appellant contends that the affidavit accompanying the search warrant contained so many misstatements as to require suppression of the evidence.

"To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement either 'intentionally, or with reckless disregard for the truth.' *Franks v. Delaware* (1978), 438 U.S. 154, 155–156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672. 'Reckless disregard' means that the affiant had serious doubts of an allegation's truth. *United States v. Williams* (C.A.7, 1984),

---

**16.** See *id.* at 147, 609 N.E.2d at 1259.

**17.** See Evid.R. 401.

**18.** See *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus.

**19.** See *State v. Wheeler* (Apr. 19, 1995), Hamilton App. No. C–940173, unreported, 1995 WL 230429.

737 F.2d 594, 602. Omissions count as false statements if 'designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate.' (Emphasis deleted.) *United States v. Colkley* (C.A.4, 1990), 899 F.2d 297, 301."[20]

■ Even if an affidavit contains false statements made intentionally or recklessly, a warrant based on the affidavit is still valid unless, with the affidavit's false material set aside, the affidavit's remaining content is insufficient to establish probable cause.[21] Although we agree with appellant's contention that the affidavit here contained some misstatements, we hold that they did not rise to a level requiring invalidation of the warrant and suppression of the evidence. Moreover, if the misstatements are excluded, the affidavit's remaining content was sufficient to establish probable cause. Accordingly, appellant's ninth assignment of error is overruled.

■ In his tenth assignment of error, appellant contends that the trial court's conduct was not impartial because of its numerous "anti-defense" rulings. "Alleged errors of law or procedure are legal issues subject to appeal and are not grounds for disqualification."[22] The record does not show that McIntosh pursued legal avenues to secure relief from perceived bias by filing a motion for recusal or an affidavit of disqualification with the Ohio Supreme Court.[23] Moreover, we have reviewed the record and find no evidence to support the contention of bias in the trial court's rulings. Accordingly, appellant's tenth assignment of error is overruled.

■ In his eleventh assignment of error, appellant contends that the co-defendants had plea agreements barring them from testifying, and that this denied him his "constitutional right to compulsory process." The record shows that the trial court invited appellant to call "whoever you wish and they may be heard." The state also confirmed, "They can do whatever they want. They have subpoena power, they can do it. The witnesses can claim the Fifth if they so choose." The record does not show that appellant called any of the other co-defendants, who included appellant's wife, to testify. Thus, appellant cannot demonstrate either error or prejudice. Accordingly, appellant's eleventh assignment of error is overruled.

---

**20.** See *State v. Waddy* (1992), 63 Ohio St.3d 424, 441, 588 N.E.2d 819, 832 (warrant's validity unsuccessfully challenged by a claim that one misrepresentation and several omissions tainted the affidavit).

**21.** See *id.*

**22.** See *In re Disqualification of Kilpatrick* (1989), 47 Ohio St.3d 605, 546 N.E.2d 929.

**23.** See R.C. 2701.03.

In his twelfth assignment of error, appellant contends that, even if the individual errors are an insufficient basis for reversal, the cumulative effect of the errors deprived him of a fair trial and require reversal of his convictions. Except for the sentencing error, since the other assignments of error are not well taken, their cumulative effect cannot be error. Appellant's contention is without merit because "[s]uch errors cannot become prejudicial by sheer weight of numbers." [24] Accordingly, appellant's twelfth assignment of error is overruled.

Therefore, the judgment of the trial court is affirmed with respect to the findings of guilt and the sentence imposed on count two, but the sentences imposed on counts three and seven are reversed, and this cause is remanded for resentencing in accordance with the terms of this decision.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SHANNON, J., concurs.

PAINTER, P.J., concurs in part and dissents in part.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

PAINTER, Presiding Judge, concurring in part and dissenting in part.

As to the first assignment of error only, I dissent. Though possession and trafficking are, under any common-sense definition, allied offenses, the Ohio Supreme Court, in *State v. Rance,*[25] decreed an "abstract test" for comparison. But we should compare the elements based on the facts of the actual case, and where, as here, the trafficking and possession counts involve the identical drugs, there should be no separate sentence for the possession counts. This was the law before the Ohio Supreme Court's misinterpretation in 1999.[26]

**24.** See *State v. Hooks* (2001), 92 Ohio St.3d 83, 85, 748 N.E.2d 528, 531, citing *State v. Hill* (1996), 75 Ohio St.3d 195, 212, 661 N.E.2d 1068, 1084; *State v. Daniels* (Feb. 21, 1996), Hamilton App. Nos. C–950347 and C–950348, unreported, 1996 WL 72277.

**25.** *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.

**26.** See, *e.g., State v. Lang* (1995), 102 Ohio App.3d 243, 656 N.E.2d 1358; *Dayton v. McLaughlin* (1988), 50 Ohio App.3d 69, 552 N.E.2d 965; *State v. Johnson* (May 1, 1998), Hamilton App. No. C–970180, unreported, 1998 WL 212752.

I agree with Judge Harsha of the Fourth Appellate District who, in a case comparing elements of another statute, wrote that "[w]hile this result seems intuitively wrong, the Supreme Court's holding in *Rance* forces us to affirm the appellant's convictions." [27] The *Rance* case is wrongly decided, but until that court rectified its error, we were constrained to follow it. But I believe that the court overruled *Rance,* albeit by implication, in *State v. Fears.*[28] We so held in *State v. Grant,*[29] which the Supreme Court declined to review just a few weeks ago.[30] While an argument can be made that because the syllabus in *Rance* was not overruled in *Fears, Rance* is still viable, I prefer to conclude that the Ohio Supreme court recognized its error; though it would be much better if that court would do so specifically. I would sustain the first assignment and vacate the separate sentence for possession.

The sixth assignment complained that the trial court unduly limited cross-examination of Wesley and Klein concerning whether they had received any "deals" in exchange for their testimony. Clearly, this was an abuse of discretion. But I agree that the overwhelming evidence relegates this to harmless error.

In all other respects, I concur with the majority opinion.

---

**27.** *State v. Shinn* (June 14, 2000), Washington App. No. 99CA29, unreported, 2000 WL 781106.

**28.** (1999), 86 Ohio St.3d 329, 344, 715 N.E.2d 136, 151.

**29.** (Mar. 23, 2001), Hamilton App. No. C–971001, unreported, appeal not allowed (2001), 92 Ohio St.3d 1443, 751 N.E.2d 482.

**30.** *Id.*